# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| A.M., a minor, by and through her mother, SHAEL NORRIS<br><br>　　　　　　Plaintiff<br><br>v.<br><br>CAPE ELIZABETH SCHOOL DISTRICT, et al.<br><br>　　　　　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)　Case No. 2:19-cv-00466-LEW<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF CATHY STANKARD

Pursuant to 28 U.S.C. § 1746, I, Cathy Stankard, declare as follows:

1. I am the Director of Teaching and Learning at the Cape Elizabeth School Department ("School Department") in Cape Elizabeth, Maine.  In addition, I hold the positions of Affirmative Action Officer, McKinney-Vento Liaison and Title IX Coordinator.

2. I have been the Title IX Coordinator for the School Department since August 15, 2016.

3. In my role as Affirmative Action Officer and Title IX Coordinator, I have been intimately involved matters relating to gender-based discrimination, sexual harassment, and sexual violence within the Cape Elizabeth School Department community.

4. As a district, we seek to be proactive in ensuring the physical, social, and emotional safety of our students and staff while they are in our schools.  We do that through continuous review and revision when necessary, of our policies and procedures, by providing education and training to staff and students at all grade levels, including partnering with community resources to provide workshops; by thoroughly investigating

incidents of alleged sexual discrimination and harassment; and taking interim protective measures during the investigation and effective remedial actions when we conclude that there has been a violation of policy.

5. We encourage student involvement in our efforts. For example, since the summer we have had a stakeholder group, including students, reviewing an improving investigative procedures to make it as easy as possible for students who believe they have been victims of harassment or discrimination to report their experiences so we can provide them with the help they need.

6. In the past year, we received ten complaints, including an anonymous complaint, regarding possible violations of Policy ACAA in our schools. Nine of the ten complaints concerned sexual harassment and ranged from words, gestures, and photos to unwanted sexual contact. Some of the alleged harassment occurred on campus during school hours; in other cases, it occurred in students' homes or hotels, on weekends or during school breaks. We investigated all of the complaints because regardless of where and when they occurred, it is our duty and desire to make sure our students feel safe at school. In five of the ten cases, we determined that it was "more likely than not" that harassment had occurred and we imposed disciplinary measures, including, in one case, the maximum penalty contained in our policy.

7. On September 16, 2019, I went to Cape Elizabeth High School ("CEHS") to attend a previously scheduled meeting with building administration and others. When I arrived, I learned that the meeting would be cancelled because Principal Jeffrey Shedd and Assistant Principal Nathan Carpenter were beginning an investigation into the situation around several sticky notes that were posted in two bathrooms at CEHS.

8.  I spoke with Messrs. Shedd and Carpenter and they both agreed that I should be involved in the investigation because it appeared to be an anonymous complaint of specific sexual violence at the school.

9.  I joined the investigation which initially centered around trying to figure out who was being referred to in the notes and what that person had done.

10. During the course of interviews with students, it very quickly became clear that the notes referred to one student who will be referred to herein as Student 1.  Student 1 is male and he is one of a small percentage of minority students who attend CEHS.

11. My role in the investigation included sitting in on interviews of some but not all of the students who were spoken with, reviewing two videos which we had been told depicted Student 1 raping a female (but did not), and meeting with the Principal, Assistant Principal, School Resource Officer David Galvan, and Superintendent as we came to conclusions.

12. I sat in on an interview of A.M. on September 17.  This was the second time that A.M. had been interviewed in this investigation.  We wanted to speak with her again because although she had denied knowing anything about the notes in her first interview with Mr. Carpenter and Officer Galvan, we had been hearing from students that A.M. knew about the notes, had told several people that Student 1 was a rapist, and had specific information as to what Student 1 had done, and was "pushing a case" against him.

13. At this point, our primary focus in the investigation was to determine if, in fact, someone in our school had committed a sexual assault as alleged in the anonymous complaint.

14. At that meeting, after initially denying being involved with posting any notes, A.M. admitted that she had posted a note in the second floor girls' bathroom that stated "There's a rapist in our school, and you know who it is."

15. During the interview, we asked A.M. what she had in mind when she wrote the note. In response, she named Student 1 and said that he was on her mind because of what he had done to a friend of hers last spring. She said that Student 1 was also on her mind because she had heard about a "horrifying and graphic" video that purported to show Student 1 dragging a girl into a bathroom, locking the door, and raping her, and because everyone knew that he had been sexually assaulted his prom date the prior year.  A.M. state that the said that Student 1 was also on her mind because he had sexually assaulted or raped a friend of hers and because everyone knew that he had sexually assaulted his prom date the prior year.  A.M. stated that school did not do enough to help her friend because not only did Student 1 not get punished but he was idolized by faculty and received a model citizenship award.

16. The incident A.M. referenced involving her friend had been addressed last year (and continues to be addressed this year) to the mutual satisfaction of the female and Student 1.

17. When we  asked about her motivations for writing, posting, and sharing the note, A.M. stated that she wanted to force the School Department to have conversations about sexual assault to "deal with" this particular student (by punishing him and not rewarding him, e.g., model citizenship award), and to create climate of fear in the school

18. The only student A.M. mentioned during the meeting as a rapist was Student 1.

19. Following our discussion with A.M., it was clear to me not only that Student 1 was the person referred to in the sticky notes, but also that A.M. had no new information indicating that Student 1 had sexually assaulted anyone.  I knew this because I had watched the videos and spoken with the alleged victim of the other incident mentioned by A.M.

20. My conclusion as a result of the Title IX investigation was that Student 1 was not guilty as alleged.  I therefore took no further action.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed: October 16, 2019                    */s/ Cathy Stankard*

                                              Cathy Stankard